IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Catherine Greene, ) | |
| ) | Civil Action No. 8:04-22815-RBH-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On March 4, 2002, the *pro se* plaintiff filed an application for DIB alleging disability beginning December 6, 2001. The application was denied initially and on reconsideration. The plaintiff requested a hearing, which was held on May 5, 2004. Following the hearing, at which the plaintiff and her counsel appeared, the administrative law judge considered the case *de novo*, and on July 20, 2004, determined that the plaintiff was not entitled to benefits. This

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

determination became the final decision of the Commissioner when it was adopted by the Appeals Council on October 1, 2004.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's osteoarthritis and hypothyroidism are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. I find the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform work that does not require lifting or carrying in excess of 50 pounds occasionally or 25 pounds frequently; sitting, standing or walking in excess of 6 hours each in combination for an 8 hour day; any climbing of ladders, ropes, or scaffolds; or more than frequent balancing, stooping, kneeling, crouching, crawling, or climbing of stairs and ramps.

7. The claimant's past relevant work as cafeteria worker did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

>    8.  The claimant's medically determinable osteoarthritis and hypothyroidism do not prevent the claimant from performing her past relevant work.
>
>    9.  The claimant was not under a "disability, as defined in the Social Security Act, at any time through the date of the decision (20 CFR §404.1520(f)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually

performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial

evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff was born on July 20, 1945 and was 58 years old at the time of the hearing. She has a tenth grade education and past relevant work experience as a school cafeteria worker (Tr. 33; 35). The plaintiff alleges that she became disabled on November 10, 2003 due to a variety of impairments.[2]

The plaintiff has a history of breast cancer which was diagnosed in November, 2001 and successfully treated with a lumpectomy, chemotherapy and radiation in 2002 (Tr. 109; 121-122; 131; 142; 147). She also has a history of hypertension, which was, as characterized by her physicians, controlled with medication (Tr. 115; 116; 235). In addition, the plaintiff has a history of obesity (Tr. 34; 112; 149) and was treated for complaints of cramping in her thighs (Tr. 113), pedal edema (Tr. 114; 142), diabetes (Tr. 119), an asymptomatic enlarged heart (Tr. 112) and lymphadenopathy of the left arm following her cancer surgery (Tr. 142). The plaintiff also had a history of osteoarthritis and low back pain (Tr. 142; 153; 189-191; 196).

The plaintiff is proceeding *pro se* in this appeal. In her brief, she touches on several issues, including the fact that her doctor, Dr. M. Gillian Skinner, completed a form dated April 7, 2005 in which she diagnoses the plaintiff with hypertension and states that the plaintiff could "never" return to work.[3] Dr. Skinner states that the plaintiff's "movement is restricted by her morbid obesity and osteoarthritis with chronic pain." There are no medical records or reports attached to this statement.

---

[2]In her original application, the plaintiff alleged an onset date of December 6, 2001. However, at the hearing the plaintiff acknowledged that she continued working after that date and her attorney amended the alleged onset date on the record to November 10, 2003 (Tr. 32).

[3]This "Attending Physician Statement" is apparently part of an application the plaintiff submitted for Long Term Disability benefits. A copy of the form is attached to the plaintiff's brief.

5

The plaintiff cannot complain that the ALJ did not give any weight to Dr. Skinner's statement because the form was not completed until six months after the Appeals Council's denial of review made the ALJ's decision final in this case.  Moreover, in her statement, Dr. Skinner indicates that she did not begin treating the plaintiff until November 5, 2004, one month after the decision became final.  Therefore, Dr. Skinner's opinion does not relate to the time period involved here, the relatively short period of time between November 10, 2003, the alleged onset date, and July 20, 2004, the date of the ALJ's decision.  *See Wilkins v. Secretary, Dep't of Health & Human Servs.,* 953 F.2d 93, 95 - 96 (4th Cir. 1991)(*en banc*) ("Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* at 96 (citation omitted).

Additionally, substantial evidence supports the decision of the ALJ here that the plaintiff was capable of performing a range of medium work with limitations.  The plaintiff's breast cancer was successfully treated in 2001 and 2002 and there is no indication that it recurred.  She testified that she had pain under her left arm and around her incision site in her left chest wall, but there is no indication that this pain kept her from working.  In fact, most of the symptoms she complained of existed prior to her alleged onset date, when she was still working.  The record also indicates that the plaintiff continued to work while undergoing chemotherapy (Tr. 38-40; 143).

The record indicates that the plaintiff has hypertension, though her blood pressure readings remained fairly consistent during the period in question.  Prior to November, 2003, treatment notes of her physicians indicate that her blood pressure was "controlled" with medication (Tr. 115; 116; 253), though later on the same general readings were characterized as "not controlled" or only "marginally controlled" (Tr. 212; 217; 218; 235; 281-284; 296).  However, none of the plaintiff's treating physicians ever limited her activities because of her hypertension, nor did they impose any work activity restrictions on her.  In fact, the plaintiff was encouraged to exercise and engage in physical activity, yet she did not follow these

6

suggestions. On April 15, 2004, the plaintiff was seen by Dr. Richard Rogers, who told the plaintiff that there was "probably a good chance that she would not need [hypertension] medications if she were to lose weight." Dr. Rogers went on to note:

> I just really tried to hammer home to her about weight loss, and exercise, she wanted me to give her an RX for medicine that would make it easier for her to exercise and I told her that there was no such thing as that, she just needed to eat less, walk and get exercise. I gave her [some prescriptions] and again just really tried to work on her as far as self care and really tried to get the message across to her that she could help herself by losing weight and getting exercise and she kept giving me reasons that she couldn't exercise and none of them were legitimate and I just kept telling her that she needed to be realistic and face the facts about what is going on ... .

(Tr. 294-295).

The plaintiff's other problems included hyperthyroidism, which was noted as "mild" by Dr. Robert Turner, who examined her on March 18, 2004 (Tr. 280), and an enlarged heart , which was asymptomatic (Tr. 112). The plaintiff's physicians did not limit her activity as a result of either impairment. The plaintiff was hospitalized in November 2003 due to general body aches and weakness, but her condition improved with physical therapy. While the plaintiff was not pain free upon discharge, she was given medication and was encouraged to stick to a low calorie diet and continue with physical therapy (Tr. 275-276).

On December 31, 2003, Dr. Gregory Browning completed a form for the plaintiff's employer in which he opined that the plaintiff had been disabled since November 10, 2003, and that her disability would continue "until further evaluation by MD". (Tr. 289). The ALJ noted this "opinion" from Dr. Browning, but correctly found that Dr. Browning provided no medical basis for this restriction. Additionally, as noted by the ALJ, Dr. Browning's opinion was inconsistent with his own treatment records, in which he found that the plaintiff's symptoms of body aches, weakness, leg pain and cramps, and difficulty moving had improved following hospitalization and physical therapy (Tr. 275-276). Finally, also as noted by the ALJ, Dr. Browning re-

examined the plaintiff a month after his opinion, and found that her heart was functioning normally, there was no evident abnormal curvature of the spine, there was no point tenderness in the lower back or shoulders, she had full range of motion in her sacroiliac joints and hands, a knee examination was normal, she had normal reflexes, her motor strength and coordination were good, and there were no sensory deficits (Tr. 285 -288). Dr. Browning made no diagnosis or recommendations, nor did he discuss the plaintiff's ability to work. Similarly, Dr. Browning examined the plaintiff again in February, 2004, again, with normal findings, aside from a borderline elevated blood pressure (Tr. 281-284). Dr. Browning again made no diagnosis and no notation regarding the plaintiff's work status.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). A "medical opinion" is a "judgment[] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(20. However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

Here, substantial evidence supports the ALJ's decision to discount Dr. Browning's opinion. Not only was the opinion not supported by medical evidence in the record, it also appears to have been based primarily on the plaintiff's subjective complaints. *See Craig v.*

8

*Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (ALJ may disregard a physician's opinion that is based on a claimant's subjective description of symptoms).

The findings of the state agency physician further support the ALJ's determination that the plaintiff could perform a limited range of medium work despite her impairments. The state agency physician reviewed the plaintiff's medical records and determined that she retained the residual functional capacity to perform the minimal exertional requirements of medium work, with added restrictions, such as no climbing of ladders, ropes or scaffolds, and not more than frequent climbing of ramps or stairs, balancing, stooping, kneeling, crouching and crawling (Tr. 200 - 207). The state agency physician's reports were consistent with the fact that the plaintiff performed full time medium work with the same long-term impairments for several years prior to November, 2003. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993) (ALJ may properly give significant weight to an assessment from a non-treating physician).

The plaintiff also contends that this court should "take 'judicial notice' of the State of South Carolina's certification that Plaintiff is disabled." (pl. brief at 1). There is no evidence in the record supporting or even explaining her claim that she has been found disabled by the state. Moreover, the court would not be bound by any state determination as to a claimant's disability.

The plaintiff also argues that she is entitled to a hearing (pl. brief at 2). However, it appears from the record that she received a full administrative hearing at which she was fully represented by counsel. Further, there is no evidence that there has been any undue delay in the processing of her claim.

The plaintiff also makes an argument that her alleged onset date should not have been amended to reflect that she continued to work after her original onset date. However, the transcript reflects that the plaintiff's attorney requested the change in onset date at the hearing and specifically stated on the record that he had discussed the matter with his client (Tr. 32).

9

The plaintiff also argues that she is "entitled to benefits" under the Americans with Disabilities Act, the Rehabilitation Act of 1973, the Employee Retirement Income Act, and the equal protection and due process clauses of the 14th Amendment of the United States Constitution (pl. brief at 3). These arguments are not relevant to the plaintiff's current action appealing the denial of her Social Security claim for benefits.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

s/ Bruce H. Hendricks
United States Magistrate Judge

January 11, 2005
Greenville, South Carolina